1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL JUDULANG<br><div align="right">Petitioner,</div><br>vs.<br><br>MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, ALBERTO GONZALES, ATTORNEY GENERAL, ROBIN BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, GABRIELA PACHECO, OFFICER-IN-CHARGE,<br><div align="right">Respondents.</div> | **CASE NO. 07CV1414 IEG (CAB)**<br><br>**ORDER DIRECTING PETITIONER'S RELEASE UNDER APPROPRIATE CONDITIONS OF SUPERVISION** |

## INTRODUCTION

Presently before the Court is Petitioner Joel Judulang's Motion to Enforce This Court's Order. The Court GRANTS the Motion and ORDERS that Petitioner, Joel Judulang, be released under appropriate conditions of supervision.

## BACKGROUND

**I.** **Factual Background**

**i.** **Prior Proceedings**

Petitioner, born in the Phillipines, has been a lawful permanent resident of the United States since July 4, 1974. On October 11, 1989, Petitioner was convicted of voluntary manslaughter in California state court and sentenced to a six-year suspended sentence. (Respondents' Return in Opposition to the Petition, Doc. 8, Ex. B.) On June 12, 2003, Petitioner was convicted of grand theft in California state court and sentenced to two years and eight months in prison. (Id., Ex. C.)

On July 7, 2005, Petitioner was taken into custody by Respondents due to the initiation of removal proceedings. He was charged with deportability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and

1    (iii) which allow the deportation of an alien convicted of an aggravated felony and the deportation of

2    an alien convicted of two or more crimes involving moral turpitude.

3          On September 28, 2005, an immigration judge ordered petitioner removed. (Return, Ex. E.)

4    Petitioner appealed to the Board of Immigration Appeals ("BIA"), which denied his appeal on February

5    3, 2006. (Return, Ex. F.) Petitioner filed a petition for review of the BIA's decision in the Ninth Circuit

6    Court of Appeals on February 24, 2006.  (Return, Ex. G.)  His petition for review, Case No. 06-70986,

7    contests his removability on several grounds.  Petitioner concurrently filed a motion for stay of

8    removal, which Respondents did not oppose, and the court granted on July 7, 2006.  (Id.)  Petitioner

9    filed his opening brief on October 23, 2006, and Respondents filed an opposition on December 7, 2006.

10   (Id.)  The Ninth Circuit heard oral argument on June 4, 2007.  (Id.)  The Ninth Circuit then stayed

11   petitioner's case pending the outcome of another case addressing the same issue raised by Petitioner,

12   Abebe v. Gonzales.  In a published opinion in Abebe, 493 F.3d 1092, 1099 (9th Cir. 2007), the court

13   rejected a detainee's argument under Section 212(c) of the Immigration and Naturalization Act which

14   was identical to one of petitioner's claims in his appeal.  The Ninth Circuit has since withdrawn its

15   opinion pending rehearing of Abebe en banc (Petitioner's Notice, Doc. No. 9).  The court cited Abebe

16   in denying petitioner's appeal as to his Section 212(c) argument (id. at 5), and Petitioner argues the

17   court is likely to rehear his case after rehearing Abebe (Doc. No. 11).      Petitioner's continued

18   detention has been reviewed twice during the pendency of his Ninth Circuit appeal.  On June 6, 2006,

19   Petitioner was informed of ICE's decision to continue to detain him due to his failure "to demonstrate"

20   he "will not pose a flight risk."  (Return, Ex. I.) On June 5, 2007, Petitioner was informed of the ICE's

21   decision to continue detention by a letter explaining he is "an extreme threat to the community" and

22   thus will remain in ICE custody pending removal from the United States.  (Return, Ex. H.)

23          **ii.     Petitioner's Habeas Petition**

24          On August 2, 2007, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 18 U.S.C.

25   2241, arguing that his detention at the hands of Respondents was unlawful under the Ninth Circuit's

26   decisions in Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005) and Nadarajah v. Gonzalez, 443 F.3d 1069

27   (9th Cir. 2006).

28          On February 12, 2008, this Court granted in part Petitioner's Petition and, relying on the Ninth

Circuit's remedy in <u>Tijani</u>, ordered Respondents to provide Petitioner with a bail hearing before an immigration judge with the power to grant him bail unless the government were to establish Petitioner as a flight risk or a danger to the community.

On March 28, 2008, Petitioner filed a Motion For Enforcement of This Court's "Order Granting in Part Petition for Writ of Habeas Corpus," asserting Respondents are still unlawfully detaining him and that they have failed to prove he is a flight risk or danger to society. Plaintiff asserts that the untranscribed hearing before an immigration judge held on March 11, 2008 failed to comply with the Court's February 12, 2008 Order or due process. By the time of the hearing, Petitioner had been in continuous custody for over five years.

**iii.    Tijani Bail Hearing**

Petitioner asserts that after the Court's Order was issued, nothing happened for thirteen days. Then, on February 25, 2008, Petitioner received notice from an ICE officer that he was scheduled to appear at a "custody redetermination hearing before the immigration court" in El Centro, California less than 24 hours later. Petitioner notified counsel immediately who sought and received a continuance to March 11, a date when witnesses would be able to attend.

According to the declarations of both counsel in the case, the following transpired at the March 11, 2008 hearing:

> Immigration Judge Dennis R. James conducted the hearing. The IJ denied Petitioner's request to record proceedings.
>
> During the course of the hearing, the IJ indicated his reluctance to conduct the hearing at all, stating that he believed that he lacked jurisdiction to conduct the bail hearing, but would conduct the hearing only because he was ordered to do so by this Court. Likewise, the IJ stated that the BIA had no jurisdiction over any appeal, and acting on this belief, crossed out the line on his order that normally would be used to indicate whether appeal was waived or reserved. The IJ instructed the Government and Petitioner to take any actions they believed appropriate at the conclusion of the hearing.
>
> After initiating the hearing by conducting questioning of Petitioner, the IJ asked Petitioner's counsel to proceed. Upon being reminded that the Government bore the burden of proof, the IJ required the Government to present its case first.
>
> Apparently in response to Government questions, Petitioner testified about his past criminal convictions. The Government presented no witnesses and introduced no documentary evidence. It made no claim that Petitioner presented a flight risk.
>
> The Government argued Petitioner presented a danger to the community on the basis of his prior convictions. This included a 1989 conviction for manslaughter, for which Petitioner served 228 days in county jail and was sentenced to four years

probation, two juvenile adjudications from 1982, a 2001 conviction for driving under the influence, and a 2003 felony conviction for grand theft of the diamond engagement ring Petitioner had given to his then fiancee, for which he was sentenced to two years and eight months in state prison. The Government did not introduce the conviction documents because testimony was elicited and Petitioner admitted to the convictions.

The Government made no claim that Petitioner had engaged in any unlawful or violent behavior in the time since his 2003 conviction.

Petitioner presented testimonial and documentary evidence of his non-violent character, community ties, rehabilitation, family support, and likelihood of successful compliance with supervision.

Petitioner also presented certificates of completion for classes in parenting and relationships and family services courses which he completed while in state prison as well as a certification recognizing his participation while in immigration custody in "Introduction to Vipassana Meditation." Petitioner also presented evidence that while in Respondents' custody, he had been entrusted with a job as Recreation/Sport Room worker, and had been recognized for his outstanding performance with a certificate of achievement.

At the close of the hearing, the Government argued Petitioner had an unbroken record of criminality and could therefore be expected to pose a danger upon release.

The IJ found Petitioner was a "danger to the public." He stated that Petitioner had not been deterred over the years by his prior convictions and found that the strong support of his members did not compel a conclusion Petitioner would be any less dangerous then when he enjoyed the same family support during the time he sustained the manslaughter conviction.

The IJ provided no written findings or reasoning at the time of the hearing. The IJ issued a form order in which the IJ checked the box indicating that "the request for a change in custody status be denied," wrote in the words, "Danger to the Public . . . 'No Bond,'" and crossed out the line concerning appeal.

### iv.    Immigration Judge Submits Written Findings

On April 23, 2008, Petitioner filed a supplemental exhibit in the form of a letter from the IJ Dennis James, dated April 18, 2008. The letter contains a bond memorandum related to the March 11, 2008 hearing. In the memorandum, the IJ recounts the conduct of the hearing described above. At the end of the memorandum, the IJ notes that Petitioner's "criminal conduct has continued from a young age right up through the arrest, conviction and sentence on the most recent case. In the next sentence, the IJ states he finds the Petitioner is not a flight risk but that Petitioner is a danger to the community and others and should be held without bond. (See Supp. Ex., Doc. 18.)

## II.    Procedural Background

Petitioner filed a Motion to Enforce the Cour's Order on March 28, 2008. (Doc. No. 14.) Citing procedural and substantive errors by the IJ, Petitioner seeks an order from this Court directing

that he be released under appropriate conditions of supervised release.  Respondents filed their opposition on April 14, 2008.  (Doc. No. 15.)  Petitioner filed his reply on April 21, 2008.  The Court heard argument on this case, as well as in a case raising similar issues, <u>Mau v. Chertoff, et. al.</u>, 07cv2037-IEG (LSP), on April 28, 2008.

## DISCUSSION

i    **Did he Bail Hearing in this Case Satisfy this Court's Order?**

   **i.    Parties' Arguments**

      <u>1.</u>    <u>Petitioner's Argument</u>

         <u>a.</u>    <u>The IJs reliance on past convictions alone cannot support a finding of present dangerousness.</u>

Petitioner argues that the meager evidence of dangerousness presented at his hearing—the fact of two juvenile adjudications in 1982, a 1989 conviction for voluntary manslaughter, 2001 misdemeanor DUI and 2003 grand theft—fails, as a matter of law, to prove Petitioner poses a present danger to the community.

Petitioner emphasizes that it is not enough for the government to claim dangerousness on the basis of only past crimes, especially ones that are remote in time because "presenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption." <u>Ngo v. INS</u>, 192 F.3d 390, 398 (3d Cir. 1998) ("Measures must be taken to assess the risk of flight and danger to the community on a current basis."); <u>Korkees v. Reno</u>, 137 F.Supp.2d 590, 598 (M.D. Pa. 2001) ("The mere conviction of a crime is not an adequate basis for finding that an individual is a threat to the community.").

Petitioner notes that the presumption of dangerousness applied to him rendered the relief ordered by this Court effectively meaningless.  Further, Petitioner notes that the presumption of dangerousness would apply to nearly every petitioner afforded relief under <u>Tijani</u> since many such individuals fall within the classification of 8 U.S.C. § 1226(c), which means they have sustained criminal convictions or engaged in past terrorist activities.

Petitioner cites the Ninth Circuit's recent decision in <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008) in support of his argument that past convictions are insufficient to establish present dangerousness.  In that case, the Ninth Circuit reversed the state's denial of parole to a prisoner serving

1    an indeterminate term for murder because the state's decision was premised on "continued reliance on

2    [the] unchanging circumstances" of the crime committed twenty years ago.  The court explained that

3    such reliance "violates due process because petitioner's commitment offense has become such an

4    unreliable predictor of his present and future dangerousness."  Id. at 546.  The court observed that the

5    fact of the prior offense amounted to "no evidence" at all to support a determination that release "would

6    unreasonably endanger public safety."  Id. at 544, 546.

7         Petitioner says that like Hayward, here, the IJ erred by relying solely on past conduct which was

8    no evidence of present dangerousness.

9         Petitioner argues that distant in time convictions have little predictive value of likely recidivism.

10   See e.g., Julian V. Roberts, The Role of criminal Record in the Sentencing Process, 22 Crime & Justice

11   303, 335 (1997).  See also USSG § 4A1.2(e)(3) (imposing 15 year staleness cap on using prior

12   convictions to enhance a federal criminal sentence).

13              **b.    Respondents failed to provide a hearing which comported with due process**

14   Petitioner also asserts he should be released because Respondents failed to provide a the hearing

15   required by this Court's order and the Due Process clause.  Petitioner complains the hearing lacked

16   judicial safeguards essential to procedural fairness, including some form of recording or transcription

17   as well as an uninterested decisionmaker.

18        With respect to the lack of recording or transcription, Petitioner argus that Respondents

19   reconstruction of the hearing is no remedy to the lack of a recording of transcription because "once the

20   court has entered judgment, it may become subject t to the very natural weight of its conviction, tending

21   to focus on that which supports its holding."  Bergerco, U.S.A. v. Shipping Corp. of India Ltd., 896

22   F.2d 1210, 1215 (9th Cir. 1990).

23              **c.    Petitioner should be released immediately**

24        Petitioner argues he is entitled to immediate release under appropriate conditions of supervision.

25   Such relief is justified, says Petitioner, because Respondents have failed to make any claim that he

26   poses a flight risk and have failed to prove Petitioner presently poses any kind of articulable danger.

27        In the alternative, Petitioner asks the Court to hold an evidentiary hearing or refer such a

28   hearing to the assigned magistrate judge.  Petitioner argues such a hearing would be more appropriate

1    than proceedings before the IJ since it would involve a neutral, impartial arbiter unaffiliated with

2    Respondents and would produce a written record.

3                    2.    Respondents' Argument

4           Respondents contend the Government complied with the Court's order because it conducted

5    a bond hearing for Petitioner before an IJ with the authority to grant bail.  At the hearing, the

6    Respondents say the Government established Petitioner is a danger to the community and that his

7    continued detention is justified.

8           Respondents also contend Petitioner has failed to articulate a due process violation because he

9    only challenges a discretionary and factual bond determination.  Respondents assert such issues are

10   beyond the scope of habeas review because discretionary decisions and factual determinations are not

11   reviewable in habeas proceedings.  Gutierrez-Chavez v. INS, 298 F.3d 824, 827 (9th Cir. 2002)

12   (attempts to change the discretionary result reached by INS are not within the scope of 2241 and should

13   be denied); Sing v. Ashcroft, 351 F.3d 435, 439 (9th Cir. 2003) ("The scope of habeas jurisdiction

14   under 28 U.S.C. § 224 is limited to claims that allege constitutional or statutory error in the removal

15   process.").

16          Respondents argue that the only claim Petitioner has set forth that potentially raises a due

17   process concern is the allegation that the IJ failed to supply Petitioner with a constitutionally adequate

18   hearing.  However, Respondents contend the hearing in this case was constitutionally adequate.  With

19   respect to the lack of a written record, Respondents argue this cannot serve as the basis for a due process

20   claim because if Petitioner had appealed the bond determination, a written bond decision would have

21   issued.  Moreover, Respondents assert that no hearing transcript is usually made in a bond hearing

22   before the immigration court.

23          Respondents also contend the IJ applied the proper standard to determine the Petitioner posed

24   a danger to the community and referred to the Government's burden during the bail hearing indicating

25   the IJ placed the burden on the Government.  Further, while Respondents concede the IJ did not

26   explicitly state at the hearing that the Government met is burden of proof by "clear and convincing

27   evidence" the IJ stated that based on the evidence in the record, the Government met its burden of

28   proof."

Respondents reject Petitioner's argument that a magistrate judge should be assigned the bail hearing in this case. Petitioner argues that he role of district courts in a civil immigration habeas proceeding is akin tot he role of a court of appeals in that the district court reviews the actions of the agency only for constitutional or statutory error. Guiterrez-Chavez, 298 F.3d at 829-30 (the scope of jurisdiction under 28 U.S.C. § 2241 is limited to allegations of constitutional or statutory error in the removal process).

In addition to these arguments, Respondents assert Petitioner has failed to exhaust administrative remedies.

**ii.    Analysis**

    1.    Jurisdiction

No published decision has discussed what jurisdiction, if any, a habeas court retains over a Tijani bail hearing which it has ordered. As discussed above, Respondents assert any challenge to custody determinations, aside from challenges related to the procedural adequacy of the hearing, are beyond the scope of habeas review since bond decisions, Respondents argue, are discretionary. Petitioner disagrees, insisting this position is significantly flawed since it would prevent this Court from ensuring that its judgment was enforced.

To the extent the Respondents argue this Court lacks jurisdiction to review the IJ's bond determination, the Court disagrees. The Court finds Respondents view inconsistent with the Ninth Circuit's observation that habeas courts are empowered to make an assessment concerning compliance with their mandates. See Castro, 520 F.3d at 1064. The cases cited by Respondent are unpersuasive, since those cases did not involve a court ordered bail hearing following a finding of indefinite detention. Where, as here, the habeas petitioner has successfully secured a conditional release, that petitioner is entitled to the habeas court's continuing supervision to ensure the government's compliance with the court's order. That is, he is entitled to a judicial determination as to whether the government has established flight risk or dangerousness at the required Tijani bail hearing. Otherwise, the habeas court's grant of relief is meaningless. See Zadvydas v. Davis, 533 U.S. 678, 692 (2001) (recognizing the serious constitutional problem arising out of a statute that permits an indefinite deprivation of human liberty without the protection of significant later judicial review); see also United

1 States v. Salerno, 481 U.S. 739 (1987) (upholding pretrial detention under Bail Reform Act of 1984,

2 stressing stringent time limitations, the fact that detention is reserved for the most serious of crimes,

3 the requirement of proof of dangerousness by clear and convincing evidence, and the presence of

4 judicial safeguards).

5     By Respondents' reasoning, Petitioner's only recourse in the case of government non-

6 compliance would be to file a new Tijani petition challenging his detention anew.  Imposing such a

7 requirement would be burdensome and inefficient.  Accordingly, the Court concludes it possesses

8 authority to review the IJ's hearing for compliance with this Court's order.

9              2.    The Tijani Bail Hearing

10     It is clear from the declaration of both counsel that the IJ relied exclusively on Petitioner's past

11 criminal record in concluding Petitioner was presently dangerous.  The Government apparently made

12 no argument regarding risk of flight and the IJ offered no analysis or comment on this point.  It was this

13 dangerousness determination which the IJ indicated justified the denial of bond.

14     A review of the record reveals that Petitioner's criminal record is indeed extensive.  Petitioner's

15 troublesome behavior spans three decades, beginning with juvenile adjudications related to theft and

16 a fight in 1982, continuing with his 1989 voluntary manslaughter conviction, a 2001 DUI conviction,

17 and a 2003 conviction for grand theft involving the theft of a diamond engagement ring from his then-

18 fiancee.

19     Despite these prior convictions, however, though some quite serious, the Court finds, based on

20 the undisputed description of the evidence, argument, and witnesses, put before the IJ, the government

21 did not meet its burden imposed by this Court of proving Petitioner's present and future dangerousness.

22 Respondents highlight Petitioner's 1989 conviction for voluntary manslaughter as evidence of

23 Petitioner's violent character.  Respondents assert that Petitioner's testimony regarding this past crime

24 revealed that he had played an active role in the altercation by jumping on to the car in which the victim

25 was sitting and proceeding to kick out a window on the car.  Petitioner vigorously disputes any such

26 testimony was elicited and has furnished three declarations to that effect.  In the absence of a record,

27 the Court is unable to resolve the dispute.  However, in any event, given the remoteness of this offense,

28 the Court finds it sheds little light on the issue of Petitioner's potential danger to the community if

1   released.  See Hayward, 512 F.3d at 544, 546 (old convictions are "no evidence" that release "would

2   unreasonably endanger public safety."); Ngo, 192 F.3d at 398 ("The assessment of flight risk and

3   danger to the community must be made on a current basis").  The crime was committed decades ago

4   and there was no evidence that similar conduct, based on Petitioner's demeanor, temperament, or

5   associations, was likely to recur.  Cf. Hayward, 512 F.3d at 544 (crime committed decades ago and with

6   unusual provocation was unlikely to recur).  Similarly, the specialized circumstances of Petitioner's

7   only recent felony conviction, a five year old theft conviction for stealing an engagement ring from his

8   then fianceé—a woman who submitted a declaration on his behalf describing their currently friendly

9   relationship and Petitioner's non-violent nature (See Decl. Keri Anderson, Mem. ISO, Ex. D.)—is weak

10  support for the proposition that Petitioner would present a danger to the community at large if released.

11  See Zadvydas, 533 U.S. at 690 (holding that preventative detention based on dangerousness should be

12  limited to specially dangerous individuals).  Further, the government presented no evidence that

13  Petitioner had committed a disciplinary infraction in immigration custody nor did the government

14  present evidence of any negative behavioral episodes in the past five years in custody.  This failure is

15  additional support against a finding of dangerousness.  See id. at 691 ("When preventive detention is

16  potentially indefinite, th[e] dangerousness rationale must also be accompanied by some other special

17  circumstance, such as mental illness, that helps to create the danger.").

18       Where Petitioner's only relevant conviction for violence is nearly 20 years old and no other

19  evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an

20  error of law and the denial of bond was inappropriate.

21       Finally, the Court rejects Respondents' claim that 8 U.S.C. § 1226 mandates bond in this case

22  be at least $1,500.  Such cash bond has not been required for other Tijani petitioners who's cases arose

23  under 8 U.S.C. § 1226(c)'s mandatory detention provision.  See e.g., Tijani, NO. 03cv1624 WQH

24  (RJB) (S.D. Cal. March 13, 2006) (Doc. No. 29.).

25       Because the Court finds Respondents' failure to meet their burden of establishing Petitioner is

26  a flight risk or a danger to the community mandates his release under appropriate conditions of

27  supervision, the Court need not consider whether other alleged deficiencies in the IJ proceeding,

28  including those related to notice and/or the lack of a written record, violated due process.

**CONCLUSION**

The evidence before the IJ failed, as a matter of law, to prove flight risk or danger pursuant to the Court's order.  Accordingly, under the facts of this case, Petitioner's continued detention is not authorized by statute.  The Court therefore orders Respondents to release Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.

**IT IS SO ORDERED.**

**DATED:  June 10, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**